IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA

  -v-                                   24-CR-116

MATTHEW W. STEELE,

                 Defendant.

_____

## GOVERNMENT'S RESPONSE TO THE
## DEFENDANT'S SENTENCING MEMORANDUM

      **THE UNITED STATES OF AMERICA**, by and through its attorney, Michael DiGiacomo, United States Attorney for the Western District of New York, and the undersigned Assistant United States Attorney, respectfully files this sentencing memorandum in support of a guideline sentence of 600 months imprisonment.

### PRELIMINARY STATEMENT

      On April 15, 2025, the defendant appeared before this Court and pled guilty to Count 1 and Count 10 of the Indictment, charging violations of Title 18, United States Code, Sections 2251(a) and 2252A(a)(5)(B). In the plea agreement, the parties calculated a total offense level of 43 with an advisory guideline range of 600 months, and the defendant waived his right to appeal a sentence of 600 months or less. *See* Dkt. #42. However, the Presentence Report ("PSR") calculated a total offense level of 42 with an advisory guideline range of 360 to 600 months. On December 17, 2025, the defendant filed a sentencing memorandum requesting a sentence of imprisonment that will "permit [the defendant] to have a realistic chance of release from custody during his natural life. *See* Dkt. #64, p. 1. This memorandum

is submitted in opposition to defendant's request and in support of the government's contention that this Court should impose a sentence of 600 months, to be imposed as 360 months on Count 1, and 240 months on Count 10 to run consecutively to Count 1.

## DISCUSSION

> I believe there are monsters born in the world to human parents. Some you can see, misshapen and horrible, with huge heads or tiny bodies; some are born with no arms, no legs, some with three arms, some with tails or mouths in odd places. They are accidents and no one's fault, as used to be thought. Once they were considered the visible punishments for concealed sins.
>
> And just as there are physical monsters, can there not be mental or psychic monsters born? The face and body may be perfect, but if a twisted gene or a malformed egg can produce physical monsters, may not the same process produce a malformed soul?

John Steinbeck, East of Eden, ch. 8 (Penguin Books ed., 2002) (1952). The government recognizes that the requested sentence of 600 months will keep the defendant incarcerated for the rest of his life, however, when evaluating the factors set forth in 18 U.S.C. § 3553(a), with emphasis on the nature and circumstances of the offense and the history and characteristics of the defendant, the only conclusion to be reached is that the defendant is a monster and should be punished accordingly.

A. **The Nature and Circumstances of the Offense Warrant a Sentence of 600 Months Imprisonment**

The sexual exploitation of children is among the most heinous crimes that a defendant can commit. Memorializing that sexual abuse by producing child pornography, which unfortunately is a crime routinely handled by this Court, is even more aggravating. However, by distributing the child pornography to others and then having those child pornography files get passed around the globe, for over a decade, puts the present crime committed by the defendant in a category of its own. Here, the defendant sexually molested Victim 1, a minor

female who was entrusted to his care, during a period when Victim 1 was 9- to 12-years old (approximately 2008 to 2011). During the defendant's abuse of Victim 1, he created at least 47 child pornographic images of Victim 1, which in turn were distributed by the defendant and then traded around the world becoming known as the "DaughterAbby" series of child pornography. As of April 24, 2026, the National Center for Missing and Exploited Children (NCMEC) reported that they had received 1,170 submissions that had contained images from the DaughterAbby series.

Shockingly, the defendant's abuse of Victim 1, and his dissemination of the sexual abuse photos of Victim 1, remained a dark secret until September 2023, when a motivated analyst at Homeland Security Investigations (HSI) used new facial recognition technology to try and identify the minor female depicted in the DaughterAbby series. Based on matches to Facebook and Instagram profiles, the analyst was able to connect the child in the DaughterAbby series to Victim 1, an adult female living in Montana. On September 21, 2023, an HSI agent and detective in Great Falls, Montana, found Victim 1 and conducted a recorded interview of her in their car. When Victim 1 was told that there were sexually explicit pictures of her when she was a child on the internet, Victim 1 responded "oh shit." When Victim 1 was shown a non-explicit photograph of her to identify and asked how old she was in the photograph, there is a short silence and then Victim 1 states "um … I just … uh … um … I think that I was … I need a cigarette" as her voice is shaking. Victim 1 also stated that she "tried to suppress it or detach myself or forget about it." During her interview, Victim 1 identified her abuser as "Uncle Matt" who was not her biological uncle but was a close family friend, and who still lived in New York.

Based on the information provided by Victim 1, on March 11, 2024, HSI agents executed a federally authorized search warrant at the defendant's residence located at 2160 Bullis Road, Elma, New York 14059. Although the defendant argues in his sentencing memorandum that "[f]rom the first time he was confronted by law enforcement, he acknowledged his misdeeds and expressed remorse," Dkt. #64, p. 2, that is not accurate. Rather, when agents attempted to interview the defendant during the search warrant, he requested an attorney and did not provide a substantive statement. The only comment the defendant made was after being told of the nature of the investigation and of Victim 1, at which time he spontaneous uttered: "How is she doing?" and "I feel like crying."

During the execution of the search warrant, the agents made observations regarding the layout and the décor of the defendant's residence. Agents noted that throughout the residence, several photographs of Victim 1 as a child were found both framed and unframed in the kitchen, office, living room, on the refrigerator, and in the defendant's vehicle. Redacted copies of some of those images appear below:









Additionally, agents observed that various locations in the defendant's residence matched several of the photograph backgrounds from the DaughterAbby series.

As recounted in the PSR, during the search warrant agents seized camera equipment that matched metadata from some of the DaughterAbby images and seized two hard drives that were found to contain child pornography (one of which contained images of Victim 1). However, at the time of the search warrant, the agents were unaware that the defendant had hidden a third hard drive containing additional child pornographic images of Victim 1 in the control panel of the oven in his kitchen. A photograph taken during the search warrant depicts the oven that had the secreted hard drive.



The hard drive located in this oven was ultimately located in September 2024, after a tenant at the residence put the oven on the curb and a neighbor took the oven to scrap it. Upon locating the hard drive, the neighbor immediately notified the New York State Police.

The facts of this case are egregious. Victim 1 was entrusted to the care of the defendant, and he used his position of trust to sexually violate Victim 1 and permanently memorialize that abuse. But the victimization of Victim 1 did not end when she moved away from the defendant. Rather, through the defendant's actions of distributing the child pornography, he is solely responsible for the worldwide proliferation of the DaughterAbby series of child pornography. Therefore, the seriousness of the underlying offense clearly weighs in favor of a significant custodial sentence.

7

**B.    The History and Characteristics of the Defendant Warrant a Sentence of 600 Months Imprisonment**

The history and characteristics of the defendant illustrate that he is a pedophile who is unable to stop grooming and exploiting minor females. During the investigation, images of an additional minor victim were located on an SD card found in a camera that was seized at the defendant's residence. Specifically, some of the images on the SD card were recent photographs of a 6-year-old female (Victim 2), with some of the photographs depicting Victim 2 sucking a pacifier, topless, and/or sleeping with her shirt pushed up to expose her chest area. Victim 2 was identified as the daughter of a close relative of the defendant, and that the defendant would often babysit Victim 2, and that Victim 2 would occasionally sleep at the defendant's house. During a forensic interview of Victim 2 on March 14, 2024, she provided details about the defendant to include that he would often photograph her but did not disclose any sexual abuse by the defendant. From the photographs the defendant took of Victim 2, some of which depict the defendant lifting the shirt of a sleeping Victim 2 to expose her chest, there is no doubt that he was actively grooming her and attempting to normalize her to being photographed.

Further, following the arrest of the defendant, on March 17, 2024, undersigned counsel received the following unsolicited email:

Mr. Mango -

Based on the articles I have read, I understand you are handling the case against Matt Steele of Elma, NY. I've known Matt since I was 14 years old (I am currently 42) and I know he is in possession of pictures taken of me when I was minor. I know one victim has been identified, however what's not clear is if there were many victims. If you are trying to identify other victims as part of this case, I can explicitly explain the pictures he took of me.

Thank you for your time.

On March 18, 2024, HSI contacted the woman who sent this email (Victim 3), who lives in this district and stated that when she was 14 years old (approximately 1996), she spent a lot of time with the defendant and that he began to take photographs of her. Victim 3 reported that initially the photographs were of her clothed, but also included her in her bra and panties, and then progressed to the defendant taking topless photographs of her. Victim 3 recalled one photograph of her topless with her breasts wrapped by the defendant in plastic wrap. Victim 3 agreed to provide a photograph of herself when she was younger to assist in determining if the defendant has any images of her that qualify as child pornography. To date, no child pornography involving Victim 3 has been identified on the defendant's devices.

Therefore, for over a quarter of a century (1996 to 2024), the defendant has victimized minor females to satisfy his own deviant sexual interests. This pattern of behavior is troubling, and highlights that the defendant is a dangerous pedophile who has a deeply rooted sexual attraction to minor female children. As such, this Court should impose a guideline sentence of 600 months imprisonment to adequately punish the defendant and promote deterrence.

### C.    The Defendant's Conduct Has Negatively Impacted the Victim 1

In a child pornography case such as this one, the primary victims are the minors depicted in the images produced and possessed by the defendant. *United States v. Shutic*, 274 F.3d 1123, 1126 (7th Cir. 2001); *United States v. Sherman*, 268 F.3d 539, 547-48 (7th Cir, 2001). As the *Sherman* Court noted, "child pornography directly victimizes the children portrayed by violating their right to privacy." *Id.* As the Court noted in *Shutic*, "children ... suffer profound emotional repercussions from a fear of exposure, and the tension of keeping the abuse a secret." *Shutic*, 274 F.3d at 1126 (citations omitted). Therefore, a sentence for the

9

defendant's conduct must account for the impact his conduct had on Victim 1, who is depicted in the child pornography the defendant produced.

Victim 1, through *pro bono* counsel at the University at Buffalo Law School, has submitted a restitution request in an amount of $527,105 to $746,779, along with supporting documentation. It is clear from Victim 1's restitution submission that the abuse she suffered by the defendant during her formative years fundamentally affected the rest of her life. The Supreme Court has recognized that "[i]t has been found that sexually exploited children are unable to develop healthy affectionate relationships in later life, have sexual dysfunctions, and have a tendency to become sexual abusers as adults." *New York v. Ferber*, 458 U.S. 747, 758 n. 9 (1982). Numerous scholarly articles have documented the detrimental effects of childhood sexual abuse, including these two recent articles:

- Bhagabati, Manukrishnan and Krishnamani (2023). Surviving Childhood Sexual Abuse: A Qualitative Study of the Long-Term Consequences of Childhood Sexual Abuse on Adult Women's Mental Health. *Journal of Psychosexual Health,* 5, 4.
  - o "The effects of [Childhood Sexual Abuse] CSA on mental health can be long-lasting, with some survivors experiencing symptoms of PTSD and other mental health conditions for many years after the abuse has ended. Survivors may also experience flashbacks, nightmares, and other trauma symptoms, which can interfere with their ability to work, engage in relationships, and participate in daily activities. The findings of this study suggest that CSA can significantly impact the mental health and well-being of adult women survivors.

- Marson, Bernadette (2024). The Impact of Childhood Sexual Abuse on Interpersonal Relationships: A Cross-Sectional Study in Trinidad. *Journal of International Women's Studies*, Vol. 26, Iss. 3, Article 2.
  - o "Child sexual abuse (CSA) is a pervasive social problem that can have long-term effects on women's relationships because it makes them vulnerable to revictimization. Girls are more vulnerable than boys to be victims of CSA, and those abused by someone they trust are at higher risk of experiencing increased trauma and interpersonal problems." (abstract)

Through the defendant's conduct, he has forced Victim 1 to have to deal with lifelong issues that have substantially impacted her ability to appropriately interact with others.

10

Therefore, based on the significant consequences of the defendant's actions to Victim 1, just punishment for the defendant's crimes would be a substantial sentence of imprisonment.

## **CONCLUSION**

For the foregoing reasons, the defendant should be sentenced to a term of 600 months imprisonment, to be imposed as 360 months on Count 1, and 240 months on Count 10 to run consecutively to Count 1.

DATED: Buffalo, New York, April 24, 2026.

MICHAEL DIGIACOMO
United States Attorney

*S/ AARON J. MANGO*

BY:    _____

AARON J. MANGO
Assistant U.S. Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5882
aaron.mango@usdoj.gov